

**The following constitutes**
**the order of the court. Signed January 9, 2013**

_Stephen Johnson_

**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>PAUL and JULIE COSTA,<br><br>        Debtors. | Case No.  11-53113 SLJ<br>Chapter 7 |
| RICHARD and ROSE WOLFROM,<br><br>        Plaintiffs,<br><br>v.<br><br>PAUL and JULIE COSTA,<br><br>        Defendants. | A.P. No. 11-5201 |

## ORDER FOLLOWING TRIAL

On March 7, 2012, Plaintiffs Richard and Rose Wolfrom (the "Wolfroms") filed an Amended Complaint to Determine Non Dischargeability of Debt, seeking a determination that certain financial obligations that Defendants Paul and Julie Costa (the "Costas") had to the

ORDER FOLLOWING TRIAL

-1-

1  Wolfroms were non-dischargeable.  After pre-trial motions, the court dismissed portions of the

2  Complaint, leaving a claim under 11 U.S.C. § 523(a)(2)(A) for trial.  Defendants filed an

3  answer to the Complaint on June 6, 2012.

4       On December 7, 2012, the court conducted a trial of the case.  Plaintiffs represented

5  themselves at trial.  Defendants were represented by Joe Angelo of Sagaria Law, P.C. Several

6  witnesses testified at trial, including Plaintiff Rose Wolfrom, her sister, Linda Smith, and

7  Defendant Julie Costa.  Defendant Paul Costa did not appear at trial.[1]

8       The court finds in favor of Plaintiffs, and will determine that $25,000 of the amount they

9  advanced to Paul Costa is non-dischargeable.  The court concludes that Julie Costa's obligations

10  to Plaintiffs should be discharged, and will enter a judgment consistent with that conclusion.

11  **I.     FACTUAL BACKGROUND[2]**

12  <u>Family Relationships</u>

13  1.     Plaintiffs Richard and Rose Wolfrom are married.

14  2.     Rose Wolfrom, Linda Smith, and Defendant Paul Costa are siblings.

15  3.     Paul Costa and Julie Costa, debtors, are married.

16  <u>Sunnymount Produce</u>

17  4.     In approximately 2005-06, Sunnymount Produce was located in Sunnyvale,

18  California.  It was a small market selling fresh produce and other items.  It enjoyed a good

19  reputation for quality produce.  It was not a full scale supermarket.

20  5.     Sunnymount was jointly owned by Anthony and Craig Kozy (the "Kozy

21  Brothers"), and Paul Costa.  Apparently the market was managed in part by Paul Costa.

22  6.     During the period 2005-06, the Kozy Brothers decided to sell Sunnymount

23  Produce to Paul Costa.

24

25  ---

   [1]     The court was informed by Mr. Angelo that Paul Costa is medically unfit and could not

26  be present for trial.  No motion was made to continue the trial or for any accommodation of

27  Paul Costa, so the court proceeded with the trial as scheduled.

   [2]     This constitutes the court's findings of fact and conclusions of law pursuant to Fed. R.

28  Bankr. P. 7052 on March 7, 20122.

ORDER FOLLOWING TRIAL

<u>Paul Costa's Purchase of Sunnymount Produce</u>

7.      To accomplish the purchase of Sunnymount Produce, Paul Costa deceived both the Kozy Brothers and the Wolfroms.

8.      Paul Costa bought Sunnymount Produce on April 13, 2006, for $125,000. According to the Buyer's Final Settlement Statement, Paul Costa gave the Kozy Brothers a promissory note dated April 13, 2006, in the amount of $100,000 ("Kozy Loan"), which was secured by the business and inventory of Sunnymount Produce.  He contributed cash of $32,786.67 ($10,000 from Paul and Julie, and $22,786.67 from Paul alone) to the sale escrow as well.[3]

9.      The sale proceeds were allocated as follows:  Furniture, fixtures and equipment of $60,000, goodwill of $40,000, and lease of $25,000.

10.     The Kozy Loan did not bear interest and was to be paid by August 31, 2006, from the proceeds of Paul Costa's inheritance from the Eugene Costa trust.  If the inheritance was delayed, the Kozy Loan permitted the Kozy Brothers to extend repayment for four months (to December 31, 2006), but with interest at the prime rate accruing after August 31, 2006.

11.     Paul Costa told the Kozy Brothers that if the inheritance failed, he would be able to pay the Kozy Loan by cashing out an annuity he owned.  No testimony was introduced about the nature of this annuity, but the court formed a clear impression based on the testimony and the documents admitted at trial that the parties to these transactions (the Kozy Brothers and Paul Costa) were aware of the annuity's terms and relied on its existence.

12.     Paul Costa also approached Plaintiffs about borrowing $50,000 to assist in the purchase of Sunnymount Produce.

13.     Paul Costa told Plaintiffs he needed this money for two reasons:  to purchase inventory for the store and to pay certain vendor accounts due at the time of the closing.

14.     Plaintiffs gave Paul Costa a loan for $50,000, comprised of a check for $5,000 dated March 21, 2006, and a check for $45,000 dated March 23, 2006.

---

[3]     The escrow payment included many transactional charges, as well, which accounts for the difference in payment and the sale price.

ORDER FOLLOWING TRIAL

-3-

15.     None of the money that Plaintiffs lent to Paul Costa was deposited in the accounts of Sunnymount Produce.

16.     According to Sunnymount Produce's general ledger, the $22,786.67 in funds Paul Costa contributed to the sale escrow were drawn on Sunnymount Produce's account, and not Paul Costa's account.

17.     According to Sunnymount Produce's general ledger , Sunnymount Produce paid $27,872 for produce from its account on April 24, 2006.

18.     Paul Costa told Plaintiffs that if he had difficulty paying their loan from the operations of Sunnymount Produce, he would use the money from his annuity to pay them.

Operations of Sunnymount Produce and Continuing Financial Support by Plaintiffs

19.     After Paul Costa purchased Sunnymount Produce, his family became involved in the operations of the store.  This is partly a result of Paul Costa's medical condition.  He is obese and was not able to work at the store in any significant way.

20.     Linda Smith acted as part time bookkeeper.  Although she lived in San Diego, California, she would visit the store periodically to work in the office and pay bills.  She was familiar with the store's payroll obligations, overhead, and cash flow.

21.     Rose Wolfrom worked in the store.  Initially she was paid a wage based on hours she worked.  Later, she appears to have become more deeply involved in the business and may have been paid a draw.  Rose Wolfrom was authorized to write checks on Sunnymount Produce's account.

22.     Later, after 2007, Richard Wolfrom became involved in the operations of the store, too.  He stocked and ordered inventory, worked with vendors, and had a role in seeing payroll, rent, and vendors were paid.

Operations of Store

23.     Sunnymount produce was not profitable.  In 2006, the store lost $42,960, in 2007, $5,067, and in 2008, $62,161.

24.     In 2007 and 2008, Linda Smith repeatedly warned Richard and Rose Wolfrom that the store was performing poorly.

ORDER FOLLOWING TRIAL

-4-

25.     At some unspecified point in 2007 or 2008, Linda Smith arranged for a meeting between herself, Rose Wolfrom, Paul Costa, and a local bankruptcy attorney to discuss the store's financial problems. Rose Wolfrom drove Paul Costa to this meeting. The possibility of Sunnymount Produce filing for bankruptcy protection was discussed at that meeting.

26.     Linda Smith testified credibly that she advised Plaintiffs not to become financial involved with Sunnymount Produce given its financial problems.

27.     The court finds that as operations at the store declined, and as Paul Costa's physical condition deteriorated, Plaintiffs became more involved in the store. In 2007, Richard Wolfrom investigated the finances of the store, found them to be in poor condition, and more or less dismissed Linda Smith.

28.     In 2008, as conditions deteriorated, and after meeting with the bankruptcy attorney, Paul Costa repeatedly borrowed money from Plaintiffs to keep Sunnymount Produce afloat financially.

29.     The parties stipulated in advance of trial that Paul Costa owed Plaintiffs $330,000. This figure is based on the initial loan of $50,000, and sums lent later between 2007 and 2008.

30.     Most of the additional loans were made to cover rent, payroll, and vendor claims. They appear to have been last-minute loans, made by the Wolfroms to either Paul Costa or Sunnymount Produce, to ensure the store continued in business.

31.     The court is not clear the precise representation made to Plaintiffs to secure this additional financing. Plaintiffs maintained that Paul Costa told them he was planning to bring them into an ownership role at the store. They claim he dangled this opportunity many times to secure their participation in the business—from financing to working in the store. But the testimony at trial also indicated that Plaintiffs were aiming for a partnership with Paul Costa.

32.     Paul Costa does not appear to have made a specific representation to induce these loans. Instead, the Plaintiffs appear to have injected capital into a failing enterprise with the hope they would have the opportunity to correct the store's course and help it return to profitability.

ORDER FOLLOWING TRIAL

-5-

Paul Costa's Finances

33.     Paul Costa appears to have led something of a dual life while running Sunnymount Produce.  According to his 2006-2008 federal tax returns, Paul Costa was deeply involved in gambling.  According to his tax returns, he had gambling earnings for 2006 of $556,445, and for 2007 of $573,268, and in 2008 of $243,356.

34.     Plaintiffs admitted that Rose Wolfrom sometimes accompanied Paul Costa to casinos.  They also admit that Paul Costa supplied Rose Wolfrom with funds to gamble.

35.     Paul Costa financed his purchase of Sunnymount Produce by giving the Kozy Brothers a promissory note for $100,000.  As noted, he promised to use either his annuity or funds from the Eugene Costa trust to repay that money.

36.     Paul Costa did not use the money he borrowed from Plaintiffs to purchase Sunnymount Produce.  The $22,786.67 he deposited in escrow was drawn from Sunnymount Produce's accounts.

37.     Paul Costa did not use the Wolfroms' loan funds to pay for inventory or accounts payable at the Sunnymount Produce.  The Buyer's Final Settlement Statement does not indicate that any payables were due at the time of the sale, and no part of the sales price was allocated to inventory.  Moreover, Sunnymount Produce paid $27,872 for produce on April 24, 2006, the same day the transaction closed.

38.     In 2006, Paul Costa was not entitled to any money from an annuity at the time he told both Plaintiffs and the Kozy Brothers he could access that fund to pay them.  Paul Costa cashed in his annuity sometime earlier in 2006.  He had no remaining cash from that transaction.

39.     In 2006, Paul Costa was not going to inherit any money from the Eugene Costa trust.  According to Linda Smith, administrator of that estate, substantially all of the assets had been disbursed to Eugene Costa's heirs (Rose Wolfrom, Linda Smith, and Paul Costa) by 2005, prior to the purchase of Sunnymount Produce.  As a recipient of those funds, Paul Costa knew the trust was exhausted.

ORDER FOLLOWING TRIAL

Repayment of Loan

40.    Defendant Paul Costa repaid $25,000 of the $50,000 originally lent by Plaintiffs.

**II.    DISCUSSION**

A.    Court's Jurisdiction

The court has jurisdiction over this non-dischargeability proceeding under 28 U.S.C. § 1334(a), and 28 U.S.C. § 157(b)(2)(I).

B.    Burden of Proof

The burden of proof for any claim of nondischargeability under § 523(a)(2) lies with Plaintiff. *Grogan v. Garner*, 498 U.S. 278, 286 (1991); *Transamerica Comm. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 544 (9th Cir. 1991). Fraud must be shown by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 278 at 286.

C.    Objection to Discharge of Debts under Section 523(a)(2)

A debt can be held non-dischargeable under § 523(a)(2)(A) if the debt was incurred by way of "false pretenses, false representation, or actual fraud . . ." 11 U.S.C. § 523(a)(2)(A). In order to prove a claim under § 523(a)(2)(A), a creditor must show: "(1) that the debtor made a representation; (2) the debtor knew at the time the representation was false; (3) the debtor made the representation with the intention and purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the creditor sustained damage as the proximate result of the representation." *In re Apte*, 96 F. 3d 1319, 1322 (9th Cir. 1996); *Am. Express Travel Related Serv. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1997); *In re Tallant*, 218 B.R. 58, 64 (BAP 9th Cir. 1998).

Section 523(a)(2)(A) "requires justifiable, but not reasonable reliance." *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995). "In determining that issue, the court must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor." *In re Kirsh*, 973 F.2d 1454, 1460 (9th Cir. 1992). If the creditor was aware of debtor's inability to make payment by an initial investigation of debtor's credit then creditor's reliance is not justified. *In re Anastas*, 94 F.3d 1280, 1286 (9th Cir. 1996).

ORDER FOLLOWING TRIAL

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

D.    Transactions That Form Basis of § 523(a)(2) Complaint

1.    Original Loan of $50,000

The court finds a portion of Paul Costa's debt to Plaintiffs non-dischargeable.  Paul Costa obtained the original loan of $50,000 from Plaintiffs through misrepresentation.  He told Plaintiffs (1) he needed the money to purchase Sunnymount Produce, to pay vendor claims, and to purchase inventory.  The evidence shows that he borrowed $100,000 from the Kozy Brothers to purchase Sunnymount Produce, giving them a secured interest in the business.  He also took $22,786.67 from the coffers of Sunnymount Produce to complete the purchase.  No evidence was introduced to show that the Plaintiffs' loan proceeds were used to close the transaction.  He promised to repay the loan from the proceeds of his annuity.

Paul Costa knew his representations to the Plaintiffs were false.  He borrowed the money to purchase Sunnymount Produce from the Kozy Brothers, relying on an elaborate ruse to close that sale.  He promised the Kozy Brothers he would pay them from the proceeds of an inheritance that he had already received, and a non-existent annuity.  Thus, he did not use the money he borrowed from Plaintiffs to purchase Sunnymount Produce.  And he did not have an annuity which he could use to pay them.

Plaintiffs justifiably relied on Paul Costa's promises.  Rose Wolfrom testified credibly that they had no idea Paul Costa had borrowed the money to purchase the store from the Kozy Brothers.  Rose Wolfrom testified credibly that if she and Richard had known that Paul Costa had borrowed the money to purchase the store from the Kozy Brothers, given the Kozy Brothers a secured interest in the store, and did not actually require any of their money to close the sale, they would not have lent him any money.  They also believed that he had an annuity he could use to pay them back in the event the store faced financial problems.

The court determined that $25,000 of this sum was repaid, leaving an unpaid balance of $25,000.

2.    Later Advances to Paul Costa and Sunnymount Produce

The court cannot find that Plaintiffs' later investments in Sunnymount Produce should be excepted from discharge.  Plaintiffs became involved with Sunnymount Produce after Paul

ORDER FOLLOWING TRIAL

Case: 11-05201    Doc# 83    Filed: 01/09/13    Entered: 01/10/13 10:35:19    Page 8 of 11

Costa purchased the store. Rose Wolfrom worked at the store, had access to the check book, and saw the store day-to-day operations. She also attended a meeting with a bankruptcy lawyer with both Linda Smith and Paul Costa. Both plaintiffs knew the store was chronically short of cash – it regularly needed money for rent, payroll, and supplier claims.

Plaintiffs began advancing money to Paul Costa and Sunnymount Produce to save it from failure. At trial, no evidence was introduced to show any particular statement that Paul Costa made to Plaintiffs to induce them to advance this money. They made reference solely to generalized statements by Paul Costa, suggesting that he would form a partnership or joint ownership of the store with them.

The court does not find that Paul Costa made any specific representation that he did not have the intention of performing for the purpose of inducing Plaintiffs to lend money to him. More importantly, perhaps, the later investments took place over many months. Plaintiffs would have been aware of the store's financial problems by the time they began working there regularly and dealing with sometimes angry vendors. They knew the store required regular infusions of cash to stay afloat. They made many of those infusions. It cannot be "justifiable reliance" to see that a business is failing and to continue to lend or invest in that business, particularly where the promises they allege Paul Costa made to them were so unspecific.

E.    Julie Costa

Debtor Julie Costa testified briefly at trial. She was not a party to the transactions between Paul Costa and Plaintiffs. She had a limited understanding of what happened in connection with Sunnymount Produce. The court finds she made no representation to Plaintiffs and did not endorse any representation of Paul Costa to Plaintiffs. Accordingly, her debt to Plaintiffs is discharged.

ORDER FOLLOWING TRIAL

### III.    CONCLUSION

For the foregoing reasons, the court finds that Paul Costa's debt of $25,000 to Plaintiffs is not dischargeable under 11 U.S.C. § 523(a)(2)(A).

The court will issue an appropriate judgment.

IT IS SO ORDERED.

**\*\*\* END OF ORDER \*\*\***

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

ORDER FOLLOWING TRIAL

-10-

**COURT SERVICE LIST**

[ECF Recipients]

<u>By Mail</u>

Rose and Richard Wolfrom
4546 B-10 El Camino Real, #183
Los Altos, CA  94022

ORDER FOLLOWING TRIAL